UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

EDMUND METZGER, DEJAN DEX LIPOVIC,                    21 Civ. 04721 (JMA)(AYS)
DANIELA LIPOVIC, ZORKA LIPOVIC,
MARINA LIPOVIC, NIKOLA LIPOVIC,                       **AMENDED CLASS ACTION**
ALEKSANDAR LIPOVIC, WILLIAM MABE,                     **COMPLAINT**
MARIA RAPESTKAYA, and JUDITH WEIL,
individually and on behalf of others similarly situated,

                                    Plaintiffs,

        -against-

T-MOBILE USA, INC.,

                                    Defendant.
-----------------------------------------------------------------------X

        Plaintiffs Edmund Metzger, Dejan Dex Lipovic, Daniela Lipovic, Zorka Lipovic, Marina

Lipovic, Nikola Lipovic Aleksandar Lipovic, William Mabe, Maria Rapestkaya, and Judith Weil

("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class

members"), bring this Amended Class Action Complaint against Defendant T-Mobile USA, Inc.,

based upon their individual experiences and personal information, and investigation by their

counsel.

## <u>INTRODUCTION</u>

        1.      Plaintiffs, individually and on behalf of all others similarly situated, bring this class

action suit against Defendant because of Defendant's failure to safeguard the confidential

information of millions of current and former T-Mobile USA, Inc. customers. The confidential

information stolen appears to be encompass names, birthdays, Social Security numbers, driver's

license numbers, phone numbers, and account PIN's, among other Personal Identifying

Information (PII).

2.      T-Mobile USA, Inc. (hereinafter T-Mobile) is a nationwide telecommunications company headquartered in Bellevue, Washington and is a wholly owned subsidiary of Deutsche Telekom AG, headquartered in Bonn, Germany. With over ninety-five million customers in the United States, T-Mobile collects a significant amount of data from its current and former customers, often including sensitive personal information such as Social Security numbers, addresses, telephone numbers, dates of birth, bank account numbers, credit card numbers, financial transaction records, credit ratings and driver's license numbers.

3.      On or about August 19, 2021, T-Mobile announced by a "Notice of Data Breach" on its website that it had learned on August 17, 2021 that "a bad actor illegally accessed personal data." It was not stated when the breach itself occurred.

4.      The confidential information that was compromised in the Data Breach can be used to gain unlawful access to the users' other online accounts, carry out identity theft, or commit other fraud and can be disseminated on the internet, available to those who broker and traffic in stolen PII.

5.      While the sophistication of the methods employed in effectuating the Data Breach is not publicly known, it is certain that the Data Breach could have been avoided through basic security measures, authentications, and training.

6.      At all relevant times, Defendant promised and agreed in various documents to safeguard and protect Personal Identifiable Information (PII) in accordance with federal, state, and local laws, and industry standards, including the New York SHIELD Act. Defendant made these promises and agreements on its websites and other written notices and also extended this commitment to situations in which third parties handled PII on its behalf.

7.      Contrary to these promises, and despite the fact that the threat of a data breach has

been a well-known risk to Defendant, which has experienced data breaches in the past, especially due to the valuable and sensitive nature of the data Defendant collects, stores and maintains, Defendant failed to take reasonable steps to adequately protect the PII of its current and former customers. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect PII.

8.     As a result of Defendant's failure to take reasonable steps to adequately protect the PII of current and former T-Mobil customers, Plaintiffs' and Class members' PII is now on the internet for anyone and everyone to acquire, access, and use for unauthorized purposes for the foreseeable future.

9.     Defendant's failure to implement and follow basic security procedures has resulted in ongoing harm to Plaintiffs and Class members who will continue to experience a lack of data security for the indefinite future and remain at serious risk of identity theft and fraud that would result in significant monetary loss and loss of privacy.

10.    Accordingly, Plaintiffs seek to recover damages and other relief resulting from the Data Breach, including but not limited to, compensatory damages, reimbursement of costs that Plaintiffs and others similarly situated will be forced to bear, and declaratory judgment and injunctive relief to mitigate future harms that are certain to occur in light of the scope of this breach.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; the number of members of the proposed Class exceeds 100; and diversity exists because Plaintiffs and Defendant are citizens of different states. Subject matter jurisdiction is also based upon the Federal Trade Commission Act (FTCA). This Court also has

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Defendant as it conducts substantial business in this State and in this District and/or the conduct complained of occurred in and/or emanated from this State and District because the confidential information compromised in the Data Breach was likely stored and/or maintained in accordance with practices emanating from this District.

13.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, and/or emanated from this District, and because Plaintiffs reside within this District.

## THE PARTIES

14.     Plaintiff Edmund Metzger is an individual T-Mobile customer residing in the County of Kings, State of New York.

15.     Plaintiff Dejan Dex Lipovic is an individual T-Mobile customer residing in the County of New York, State of New York.

16.     Plaintiff Daniela Lipovic is an individual T-Mobile customer residing in the County of New York, State of New York.

17.     Plaintiff Zorka Lipovic is an individual T-Mobile customer residing in the County of New York, State of New York.

18.     Plaintiff Marina Lipovic is an individual T-Mobile customer residing in the County of Orange, State of California.

19.     Plaintiff Nikola Lipovic is an individual T-Mobile customer residing in the County of Orange, State of California.

20.     Plaintiff Aleksandar Lipovic is an individual T-Mobile customer residing in the

County of Orange, State of California.

21.     Plaintiff William Mabe is an individual T-Mobile customer residing in the County of Kings, State of New York.

22.     Plaintiff Maria Rapestkaya is an individual T-Mobile customer residing in the County of Kings, State of New York.

23.     Plaintiff Judith Weil is an individual T-Mobile customer residing in the County of New York, State of New York.

24.     Defendant T-Mobile USA, Inc., a Delaware corporation,  is a telecommunications company, partly owned by Deutsche Telekom AG, authorized to conduct business in the State of New York, which conducts business within the State of New York and within this District, with its headquarters located in Bellevue, Washington. It is the second largest wireless carrier in the United States, providing wireless voice and data services for approximately 105 million subscribers.

## **<u>FACTUAL ALLEGATIONS</u>**

25.     At all pertinent times, Plaintiffs were customers of T-Mobile, having purchased telecommunications services and devices. In the course of said purchases, Plaintiffs were required to provide certain personal and financial information to T-Mobile, including name, address, Social Security number, vehicle information, credit card numbers and driver's license number.

26.     On or about August 19, 2021, Defendant T-Mobile advised Plaintiffs via its website that a data breach had occurred, resulting in unknown actors gaining access to and stealing PII.

27.     Plaintiffs and Class members were required to agree to T-Mobile's Privacy Policy, Terms of Use, Payment Authorization, and Consent to Electronic Transactions and Disclosures.

28.     T-Mobile promised to protect the PII of its subscribers and emphasizes its purported

commitment to protection of PII. T-Mobile's website claims:

> We use administrative, technical, contractual, and physical safeguards designed to protect your data while it is under our control. For example, when you contact us by phone or visit us in our stores, we have procedures in place to make sure that only the primary account holder or authorized users have access.

29.     T-Mobile has failed to maintain the confidentiality of PII, failed to prevent cybercriminals from access and use of PII, failed to avoid accidental loss, disclosure, or unauthorized access to PII, failed to prevent the unauthorized disclosure of PII, and failed to provide security measures consistent with industry standards for the protection of PII, of its current and former customers.

30.     Plaintiffs and Class members would not have entrusted their PII to T-Mobile had they known that T-Mobile failed to maintain adequate data security.

31.     The "Notice of Data Breach" dated August 19, 2021 stated the breach was discovered on August 17, 2021, but did not state when the breach was believed to have occurred, noting that:

> Our investigation is ongoing and will continue for some time, but at this point, we are confident that we have closed off the access and egress points the bad actor used in the attack. Below is what we know to date.
>
> We previously reported information from approximately 7.8 million current T-Mobile postpaid customer accounts that included first and last names, date of birth, SSN, and driver's license/ID information was compromised. We have now also determined that phone numbers, as well as IMEI and IMSI information, the typical identifier numbers associated with a mobile phone, were also compromised. Additionally, we have since identified another 5.3 million current postpaid customer accounts that had one or more associated customer names, addresses, date of births, phone numbers, IMEIs and IMSIs illegally accessed. These additional accounts did not have any SSNs or driver's license/ID information compromised.

We also previously reported that data files with information from about 40 million former or prospective T-Mobile customers, including first and last names, dates of birth, SSN, and driver's license/ID information, were compromised. We have since identified an additional 667,000 accounts of former T-Mobile customers that were accessed with customer names, phone numbers, addresses and dates of birth compromised. These additional accounts did not have any SSNs or driver's license/ID information compromised.

Separately, we have also identified further stolen data files including phone numbers, IMEI, and IMSI numbers. That data included no personally identifiable information.

We continue to have no indication that the data contained in any of the stolen files included any customer financial information, credit card information, debit or other payment information.

As we previously reported, approximately 850,000 active T-Mobile prepaid customer names, phone numbers and account PINs were exposed. We have proactively reset ALL of the PINs on these accounts. Similar information from additional inactive prepaid accounts was also accessed. In addition, up to 52,000 names related to current Metro by T-Mobile accounts may have been included. None of these data sets included any personally identifiable information. Further, none of the T-Mobile files stolen related to former Sprint prepaid or Boost customers.

32. However, on August 15, 2021, Vice Media had broken news that an anonymous seller was auctioning "a mountain of personal data" from T-Mobile servers in an underground forum. "The data included social security numbers, phone numbers, names, physical addresses, unique IMEI numbers, and driver licenses information [downloaded locally from T-Mobile servers], the seller said."[1] The true number of T-Mobile subscribers affected is still uncertain.

33. This data breach was foreseeable, in light of the much-publicized wave of data breaches in recent years. Since at least 2015, the Federal Bureau of Investigation ("FBI") has

---

[1] Joseph Cox, *T-Mobile Investigating Claims of Massive Customer Data Breach*, MOTHERBOARD: TECH BY VICE (Aug. 15, 2021), https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million (last visited Aug. 19, 2021).

specifically advised private industry about the threat of "Business E-Mail Compromise" ("BEC"). The FBI calls BEC "a growing financial fraud that is more sophisticated than any similar scam the FBI has seen before and one—in its various forms—that has resulted in actual and attempted losses of more than a billion dollars to businesses worldwide." The FBI notes that "scammers' methods are extremely sophisticated," and warns companies that "the criminals often employ malware to infiltrate company networks."[2]

34.     T-Mobile has also experienced data breaches in the past. This marks the fifth breach for T-Mobile in the past three years.

35.     Accordingly, T-Mobile knew, given the vast amount of PII it collects, manages, and maintains, that they were targets of security threats, and therefore understood the risks posed by unsecure data security practices and systems. Defendant's failure to heed warnings and to otherwise maintain adequate security practices resulted in this Data Breach.

36.     Defendant, at all relevant times, had a duty to Plaintiffs and Class members to properly secure their PII, encrypt and maintain such information using industry standard methods, train their employees, utilize available technology to defend their systems from invasion, act reasonably to prevent foreseeable harm to Plaintiffs and Class members, and promptly notify Plaintiffs and Class members when Defendant became aware of the potential that its current and former customers' PII may have been compromised.

37.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiffs and the Class members, on the other hand. The special relationship arose because Plaintiffs and the members of the Class entrusted Defendant with their PII as part of receiving telecommunications services and

---

[2] BUSINESS E-MAIL COMPROMISE: AN EMERGING GLOBAL THREAT,
https://www.fbi.gov/news/stories/business-e-mail-compromise (last visited Apr. 20, 2020).

devices from T-Mobile. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite their obligation to protect such information. Accordingly, Defendant breached their common law, statutory, and other duties owed to Plaintiffs and Class members.

38.     Defendant's duty to use reasonable security measures also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data by entities such as Defendant.

39.     Defendant's duty to use reasonable security measures also arose under New York's SHIELD Act (General Business Law § 899-bb), requiring businesses that collect private information on New York residents to implement reasonable cybersecurity safeguards to protect that information.  It mandates the implementation of a data security program, including measures such as risk assessments, workforce training and incident response planning and testing, and became effective on or about March 21, 2020. It covers all employers, individuals or organizations, regardless of location, that collect private information on New York residents.

40.     The Federal Trade Commission has established data security principles and practices for businesses as set forth in its publication, Protecting Personal Information: A Guide for Business.[3] Among other things, the FTC states that companies should encrypt information stored on computer networks and dispose of consumer information that is no longer needed. The FTC also says to implement policies for installing vendor-approved patches to correct problems, and to identify operating systems. The FTC also recommends that companies understand their network's vulnerabilities and develop and implement policies to rectify security deficiencies.

---

[3] https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited Apr. 18, 2020).

Further, the FTC recommends that companies utilize an intrusion detection system to expose a data breach as soon as it occurs; monitor all incoming traffic for activity that might indicate unauthorized access into the system; monitor large amounts of data transmitted from the system, and have a response plan ready in the event of a data breach. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." (17 C.F.R. § 248.201 (2013)).

41.    The FTC has prosecuted a number of enforcement actions against companies for failing to take measures to adequately and reasonably protect consumer data. The FTC has viewed and treated such security lapses as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

42.    Defendant failed to maintain reasonable data security procedures and practices.

43.    Accordingly, Defendant did not comply with state and federal law requirements and industry standards, as discussed above.

44.    Defendant was at all times fully aware of its obligations to protect the PII of current and former customers. Defendant was also aware of the significant consequences that would result from its failure to do so.

45.    To date, Defendant has merely advised customers of identity theft and credit monitoring services to which they may subscribe, with no charge to T-Mobile customers. The offer, however, is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and it

entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

46.     Furthermore, Defendant's monitoring offer to Plaintiffs and Class Members squarely places the burden on Plaintiffs and Class Members, rather than upon the Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiffs and Class members in monitoring services upon discovery of the breach, Defendant merely sent instructions offering the services to potentially affected customers with the recommendation that they sign up for the services.

47.     As a result of the data breach and Defendant's failure to provide timely notice to Plaintiffs and Class members, Plaintiffs' and Class members' PII are now in the hands of unknown hackers, and Plaintiffs and Class members now face an imminent, heightened, and substantial risk of identity theft and other fraud, which is a concrete and particularized injury traceable to Defendants' conduct. Accordingly, Plaintiffs and the Class members have suffered "injury-in-fact." See *Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017).

48.     As a direct and proximate result of Defendant's wrongful actions and inaction, Plaintiffs and Class members have suffered injury and damages, including the increased risk of identity theft and identity fraud, improper disclosure of PII, the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft and to deal with governmental agencies.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action and seeks to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves and the following proposed Classes (collectively, the "Class").

50.     The Nationwide Class is defined as follows: All individuals residing in the United States whose PII was compromised in the data breach initially disclosed by T-Mobile on or about August 19, 2021.

51.     The New York Class is defined as follows: All individuals residing in New York whose PII was compromised in the data breach initially disclosed by T-Mobile on or about August 19, 2021.

52.     Excluded from each of the above proposed Classes are: Defendant, any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant; and judicial officers to whom this case is assigned and their immediate family members.

53.     Plaintiffs reserve the right to re-define the Class definitions after conducting discovery.

54.     Each of the proposed Classes meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and/or (c)(4).

55.     *Numerosity*. Fed. R. Civ. P. 23(a)(1). Pursuant to Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the proposed Class includes potentially over fifty millions of individuals whose PII was compromised in the Data Breach. Class members may be identified through objective means, including by and through Defendant's business records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

56.     *Commonality*. Fed. R. Civ. P. 23(a)(2) and (b)(3). Pursuant to Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

(a) Whether Defendant had a legal duty to implement and maintain reasonable security procedures and practices for the protection of Plaintiffs' and Class members' personal and financial information, including by vendors;

(b) Whether Defendant breached its legal duty to implement and maintain reasonable security procedures and practices for the protection of Plaintiffs and Class members' PII;

(c) Whether Defendant's conduct, practices, actions, and omissions, resulted in or were the proximate cause of the data breach, resulting in the loss of PII of Plaintiffs and Class members;

(d) Whether Defendant had a legal duty to provide timely and accurate notice of the data breach to Plaintiffs and Class members;

(e) Whether Defendant breached its duty to provide timely and accurate notice of the data breach to Plaintiffs and Class members;

(f) Whether and when Defendant knew or should have known that its computer systems were vulnerable to attack;

(g) Whether Defendant failed to implement and maintain reasonable and adequate security measures, procedures, and practices to safeguard Plaintiffs' and Class members' PII, including by vendors;

(h) Whether Defendant breached express or implied contracts with Plaintiffs and the

Class in failing to have adequate data security measures despite promising to do so;

(i) Whether Defendant's conduct was negligent;

(j) Whether Defendant's conduct was *per se* negligent;

(k) Whether Defendant's practices, actions, and omissions constitute unfair or deceptive business practices;

(l) Whether Plaintiffs and Class members suffered legally cognizable damages as a result of Defendant's conduct, including increased risk of identity theft and loss of value of their personal and financial information; and

(m) Whether Plaintiffs and Class members are entitled to relief, including damages and equitable relief.

57. *Typicality*. Fed. R. Civ. P. 23(a)(3). Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs, like all members of the Class, were injured through Defendant's uniform misconduct described above and asserts similar claims for relief. The same events and conduct that give rise to Plaintiffs' claims also give rise to the claims of every other Class member because Plaintiffs and each Class member are persons that have suffered harm as a direct result of the same conduct engaged in by Defendant and resulting in the data breach.

58. *Adequacy of Representation* (Fed. R. Civ. P. 23(a)(4). Pursuant to Rule 23(a)(4), Plaintiffs and their counsel will fairly and adequately represent the interests of the Class members. Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiffs' attorneys are highly experienced in the prosecution of consumer class actions and data breach cases.

59. *Superiority* (Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), a class action is

superior to individual adjudications of this controversy. Litigation is not economically feasible for individual members of the Class because the amount of monetary relief available to individual Plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

60. *Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief* (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants; or

(b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

61. *Issue Certification* (Fed. R. Civ. P. 23(c)(4). In the alternative, the common questions of fact and law, set forth above, are appropriate for issue certification on behalf of the

proposed Class.

## FIRST CAUSE OF ACTION FOR NEGLIGENCE

### (on behalf of Plaintiffs, the Nationwide Class and the New York Class)

62.     The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "61" above as if set forth in full herein.

63.     Defendant required Plaintiffs and Class members to submit non-public, sensitive PII for purposes of obtaining telecommunications services and devices.

64.     Defendant had, and continues to have, a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding and protecting their PII. Defendant also had, and continues to have, a duty to use ordinary care in activities from which harm might be reasonably anticipated, such as in the storage and protection of PII within their possession, custody and control and that of its vendors.

65.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between T-Mobile and its customers. Only Defendant was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiffs and the Class members from a data breach.

66.     Defendant violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the PII entrusted to it, including Plaintiffs' and Class members' PII. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control,

direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' PII.

67. Defendant, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiffs and Class members by, among other things, failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII within their possession, custody and control.

68. Defendant, by and through its negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiffs and Class members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies, procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting their PII.

69. But for Defendant's negligent breach of the above-described duties owed to Plaintiffs and Class members, its PII would not have been released, disclosed, and disseminated without its authorization.

70. Plaintiffs' and Class members' PII was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized persons without their authorization as the direct and proximate result of Defendant's failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiffs' and Class members' PII.

71. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the data breach,

Plaintiffs and Class members have suffered, and will continue to suffer, ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

72.     Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this data breach constitute negligence.

## SECOND CAUSE OF ACTION FOR NEGLIGENCE *PER SE*

### (on behalf of Plaintiffs, the Nationwide Class and the New York Class)

73.     The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "72" above as if set forth in full herein.

74.     Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiffs and Class members.

75.     The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII of Plaintiffs and Class members. The pertinent FTC publications and orders form part of the basis of Defendant's duty in this regard.

76.     Defendant required, gathered, and stored personal and financial information of Plaintiffs and Class members for sales and service purposes.

77.     Defendant violated the FTCA by failing to use reasonable measures to protect the PII of Plaintiffs and Class members and not complying with applicable industry standards, as described herein.

78.     Plaintiffs and Class members are within the class of persons that the FTC Act was intended to protect.

79.     The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class members.

80.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered, and continue to suffer, injuries, damages arising from identity theft; from their needing to contact agencies administering government benefits; potentially defending themselves from legal action base upon fraudulent applications for government benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity theft, which may take months or years to discover and detect.

81.     Defendant's violation of the FTCA constitutes negligence *per se*.

82.     For the same reasons and upon the same bases, Defendant's violation of the New York SHIELD Act and New York GBL §349 constitutes negligence *per se*.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

### (on behalf of Plaintiffs, the Nationwide Class and the New York Class)

83.     The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "82" above as if set forth in full herein.

84.     Plaintiffs and Class members, upon information and belief, entered into express contracts with T-Mobile that included T-Mobile's promise to protect nonpublic PII provided to T-Mobile from disclosure.

85.     There was offer, acceptance and consideration, the consideration being the payments paid by Plaintiffs and Class members in exchange for telecommunication services and devices, including the provisions of those agreements pertaining to the protection of PII.

86.     Plaintiffs and Class members have performed and satisfied all of their obligations to T-Mobile, pursuant to their customer agreements, except for those obligations they were prevented or excused from performing or satisfying.

87.     Defendant breached their contractual obligations to protect the nonpublic PII they possessed and with which they were entrusted with when the information was accessed by unauthorized persons as part of the data breach.

88.     As a direct and proximate result of Defendant's breach of contract, Plaintiffs and Class members have suffered, and continue to suffer, injuries, damages arising from identity theft; from their needing to contact agencies administering government benefits; potentially defending themselves from legal action base upon fraudulent applications for government benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized

activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity theft, which may take months or years to discover and detect.

89.    The above constitutes breach of contract by Defendant.

## FOURTH CAUSE OF ACTION FOR BREACH OF IMPLIED CONTRACT

### (on behalf of Plaintiffs, the Nationwide Class and the New York Class)

90.    The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "89" above as if set forth in full herein.

91.    Defendant required Plaintiffs and Class members to provide PII as a condition of obtaining telecommunication services and devices. In so doing, Plaintiffs and Class members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class members if their data had been breached and compromised, or stolen.

92.    Plaintiffs and Class members fully performed their obligations under the implied contracts with Defendant.

93.    Defendant breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that PII was compromised as a result of the data breach.

94.    As a direct and proximate result of Defendant's breach of implied contract, Plaintiffs and Class members have suffered, and continue to suffer, injuries, damages arising from identity theft; from their needing to contact agencies administering government benefits; potentially defending themselves from legal action base upon fraudulent use of their PII; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on

their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity theft, which may take months or years to discover and detect.

95.    The above constitutes breach of implied contract by Defendant.

## **FIFTH CAUSE OF ACTION FOR MISREPRESENTATION**

### **(on behalf of Plaintiffs, the Nationwide Class and the New York Class)**

96.    The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "95" above as if set forth in full herein.

97.    A special, privity-like relationship existed between Defendant and Plaintiffs and Class members herein by virtue of their relationship as recipient of PII and provider of PII, imposing a duty upon Defendant to impart correct information to Plaintiffs and Class members.

98.    The Defendant incorrectly represented to Plaintiffs and Class members that they would take appropriate measures to safeguard their PII and promptly notify them of a data breach.

99.    Plaintiffs and Class members reasonably relied upon said representations in that they held Defendant in a position of trust as recipient of their PII.

100.    As a direct and proximate result of Defendant's misrepresentation, Plaintiffs and Class members have suffered, and continue to suffer, injuries, damages arising from identity theft; from their needing to contact agencies administering government benefits; potentially defending themselves from legal action base upon fraudulent use of their PII; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity

theft, which may take months or years to discover and detect.

101.    The above constitutes misrepresentation on the part of Defendants.

## SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

### (on behalf of Plaintiffs, the Nationwide Class and the New York Class)

102.    The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "101" above as if set forth in full herein.

103.    A fiduciary relationship existed between Plaintiffs and Class members and Defendant, in that Defendants were in a position of trust with respect to Plaintiffs and Class members as recipients of Plaintiffs' and Class members' PII, and owed a duty to insure that the PII entrusted to them was safeguarded pursuant to common law and statute.

104.    The Defendant engaged in misconduct, consisting of the failure to safeguard the PII of Plaintiffs and Class members that had been entrusted to them, in violation of the duty to exercise due care, its contractual obligations and its statutory obligations pursuant to the Federal Trade Commission Act ("FTCA"), the New York SHIELD Act, New York GBL §349(a) and other statutes.

105.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs and Class members have suffered, and continue to suffer, injuries, damages arising from identity theft; from their needing to contact government agencies; potentially defending themselves from legal action base upon fraudulent use of their PII; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity theft, which may take

months or years to discover and detect.

106.  The above constitutes breach of fiduciary duty on the part of Defendant.

## SEVENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349

### (on behalf of Plaintiffs, the Nationwide Class and the New York Class)

107.  The Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" to "106" above as if set forth in full herein.

108.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

  (a) Defendant misrepresented material facts to Plaintiffs and Class members by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs' and Class members' PII from unauthorized disclosure, release, data breaches, and theft;

  (b) Defendant misrepresented material facts to Plaintiffs and Class members by representing that it did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiffs' and Class members' PII;

  (c) Defendant omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Plaintiffs' and Class members' PII;

  (d) Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiffs' and Class members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. §

45);

(e) Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to the Plaintiffs and the Class in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen. Bus. Law §§ 899-aa(2) and 899-bb (SHIELD Act).

109. Defendant's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiffs and Class members) regarding the security of its network and aggregation of PII.

110. The misrepresentations upon which consumers (including Plaintiffs and Class members) relied were material misrepresentations (*e.g.*, as to Defendant's adequate protection of PII), and consumers (including Plaintiffs and Class members) relied upon those representations to their detriment.

111. Defendant's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Defendant's conduct, Plaintiffs and other Class members have been harmed, in that they were not timely notified of the data breach, which resulted in profound vulnerability to their personal information and other financial accounts.

112. As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, Plaintiffs' and Class members' PII was disclosed to third parties without authorization, causing and will continue to cause Plaintiffs and Class members damages.

113. As a direct and proximate result of Defendant's violation of NY GBL §349, Plaintiff and Class members have suffered, and continue to suffer, injuries, damages arising from identity theft; from their needing to contact government agencies; potentially defending

themselves from legal action base upon fraudulent use of their PII; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity theft, which may take months or years to discover and detect.

114.    The above constitutes violation of NY GBL §349.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Classes defined above, respectfully request that this Court:

A.  Certify this case as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiffs as the Class representative, and appoint the undersigned as Class counsel;

B.  Order appropriate relief to Plaintiffs and the Classes;

C.  Enter injunctive and declaratory relief as appropriate under the applicable law;

D.  Award Plaintiffs and the Classes compensatory and punitive damages

E.  Award Plaintiffs and the Classes pre-judgment and/or post-judgment interest as prescribed by law;

F.  Award reasonable attorneys' fees and costs as permitted by law; and

G.  Enter such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: Brooklyn, New York
October 26, 2021

Respectfully submitted,

HELD & HINES, L.L.P.
*Attorneys for Plaintiffs and the Class*

*/s/ Philip Hines*_____
Philip M. Hines, Esq.
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com